UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| EDWARD GOFORTH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:16-cv-00606 JMB |
| ) | |
| NANCY A. BERRYHILL, ) | |
| Acting Commissioner of Social Security,[1] ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER[2]

Edward Goforth ("Plaintiff") appeals the final decision of the Acting Commissioner of Social Security ("Defendant") denying his application for supplemental security income ("SSI") benefits under Title XVI of the Social Security Act ("Act"). See 42 U.S.C. §§ 401, *et seq*. Substantial evidence does not support Defendant's decision, and it is therefore **REVERSED** and **REMANDED** for further proceedings consistent with this opinion.

**I.** **Procedural History & Summary of Memorandum Decision**

Plaintiff applied for SSI benefits on October 15, 2013, alleging that he became disabled on July 1, 2005, due to bipolar manic depression, anxiety, a pinched nerve in his shoulder, panic attacks, insomnia, trouble concentrating, stress, and eczema. (Tr. 115)[3] The Social Security

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Fed. R. Civ. P. 25(d), Nancy A. Berryhill is substituted for Carolyn W. Colvin as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act.

[2] This matter is pending before the undersigned United States Magistrate Judge with the consent of the parties, pursuant to 28 U.S.C. § 636(c). The Court has reviewed the entire administrative record in this matter, but will only discuss those portions of the record most pertinent to the issues raised by the parties.

[3] "Tr." Refers to the administrative record filed on behalf of the Commissioner.

Administration initially denied Plaintiff's application on November 27, 2013. (Tr. 55-58) Plaintiff requested a hearing before an administrative law judge ("ALJ"), and that hearing took place on October 8, 2014, with Plaintiff's counsel present. (Tr. 59, 25-44) Plaintiff and Theresa Wolford, a Vocational Expert ("VE"), testified at the hearing. (Tr. 42-44) In a decision dated October 24, 2014, the ALJ found that Plaintiff was not disabled under the Act. (Tr. 9-21) The Social Security Administration Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner in this matter. (Tr. 1-3) Plaintiff filed the instant action on August 4, 2016 and the matter is properly before this Court. (ECF No. 15); see 42 U.S.C. § 405(g).

## II.    Evidence Before the ALJ

The ALJ conducted a hearing on October 8, 2014. (Tr. 27) Plaintiff's attorney did not request any additional examinations or to seek expand or clarify the record. (Tr. 43)

### A.    Hearing Testimony

#### 1)    Plaintiff's Testimony (Tr. 26-44)

At the hearing, Plaintiff explained that he had trouble standing on his feet for long periods of time, that he could not sleep at night, that he felt trapped on a time clock or in a work environment, and that he could not stand to be around crowds of people. (Tr. 32-34) To address his physical symptoms, Plaintiff sought treatment with Dr. Karl Killion, a primary care physician who had treated Plaintiff for fifteen or twenty years. (Tr. 35) At the time of the hearing, Plaintiff had a prescription for Percocet from Dr. Killion. (Tr. 35) According to Plaintiff, Dr. Killion first prescribed Percocet eight or ten years earlier. (Id.)

Despite the psychiatric issues Plaintiff described, at the time of his hearing Plaintiff had no current mental healthcare provider and had stopped taking psychiatric medicines prescribed to

him by his previous counselor at Resolutions Behavioral Health ("RBH") roughly a year before. (Tr. 33-34, 150) Plaintiff testified that he did not agree with his treatment plan because a nurse practitioner treated him rather than a doctor and because the medicines prescribed did not work. (Tr. 34) Plaintiff also testified that he lost Medicaid "right after" seeing the nurse practitioner at RBH. (Id.) Plaintiff's medical records do not clarify his reasons for ceasing treatment. Notes from his last appointment, on April 17, 2013, recommend another appointment in four weeks and contain no reference to closing his file. (Tr. 152)

Plaintiff stated that because he had no insurance at the time of the hearing, no psychiatrist would treat him. (Tr. 34) Additionally, Plaintiff represented that he had been approved for Medicaid coverage recently but that every psychiatrist he spoke with had a two month wait until their first available appointment. (Id.) Plaintiff offered no documentation of psychiatrists' refusal to treat him without insurance, his search for a psychiatrist, or the waiting period to see a psychiatrist.

At the time of the hearing, Plaintiff lived in a house with his wife and his mentally disabled daughter. (Tr. 35) Plaintiff testified that during the day, he watches TV or tries to keep active by visiting his mother or his daughter. (Tr. 36) Plaintiff testified that he performs no yard work and "hardly any" household chores, but that he shops at the store when he has to, accompanied by his wife or son. (Tr. 36, 40)

### 2) **Vocational Expert's Testimony** (Tr. 40-43)

Theresa Wolford testified as a vocational expert ("VE") at the hearing. The ALJ asked the VE to consider a hypothetical person of Plaintiff's age, education, and work experience who could work at the light exertion level. (Tr. 42) This hypothetical person should avoid concentrated exposure to vibration, could occasionally climb ramps and stairs, stoop and crouch,

but could never climb ladders, ropes, or scaffolds. (Id.) This person could perform simple routine tasks in a low stress work environment. (Id.) The ALJ defined a low stress work environment as one with "only occasional workplaces change" and one with occasional contact with supervisors, coworkers or the general public. (Id.)

The VE testified that this hypothetical person could perform several jobs, including: (1) housekeeping; (2) routing clerk; and (3) assembler production. (Tr. 42) If the hypothetical person with the same limitations was also off task in excess of 20 percent of the day, the VE testified that no jobs would exist for them in the economy. (Tr. 43)

### B.  Plaintiff's Work History and Function Reports (Tr. 30, 32, 100-110, 128-137)

Plaintiff has work experience as a building maintenance worker. (Tr. 30, 32, 110) In the function report he filled out, Plaintiff indicates that he does not need special reminders to take care of personal needs and grooming, and that he shops for groceries about once a month. (Tr. 130, 131) The report also indicates that Plaintiff needs reminders to take medicine, does not prepare his own meals, and does not perform house or yard work because he has no energy and because he experiences heightened pain when he stands for a long time. (Id.) Plaintiff also reported that he has trouble getting along with other people because he "can't stand to be around a lot of people or sometimes just one" and that he does not handle changes in routine well. (Tr. 133, 134) Finally, Plaintiff indicated that he can pay attention for "not long," that he can follow written instructions "somewhat," and that he can follow spoken instructions "some." (Tr. 133)

### C.  Other Evidence

#### 1)  Medical Records

The record before this Court does not include medical records from the time of Plaintiff's alleged onset date of July 1, 2005, through January 23, 2013. On January 23, 2013, Plaintiff

began treatment at Rehabilitative Behavior Health ("RBH") with Nancy McNail, a psychiatric-mental health nurse practitioner. He reported anxiety, decreased sleep (two hours per night), and at times not wanting to be around others. (Tr. 157, 158) Treatment notes from that visit indicate that Plaintiff had not taken any psychological medication for several years prior to his initial visit. (Tr. 157) Ms. McNail diagnosed Plaintiff with bipolar affective disorder and prescribed Depakote and counseling. (Tr. 158) Ms. McNail administered a mini-mental status questionnaire, on which Plaintiff scored 27/30. Ms. McNail also assigned Plaintiff a Global Assessment of Functioning (GAF) score of 45. [4] (Id.)

Plaintiff returned for a follow-up visit on March 6, 2013, reporting mood swings, irritability, and continued trouble sleeping. (Tr. 154) Ms. McNail observed a tangential thought process, difficulty sleeping, and an impaired long term memory, but otherwise noted a normal mental status. (Tr. 155) At this visit, Ms. McNail prescribed Trazodone to help Plaintiff sleep and restarted him on Depakote. (Tr. 156) Ms. McNail also assigned a GAF score of 50 to Plaintiff. (Tr. 155)

On April 17, 2013, Plaintiff returned for his last visit with Ms. McNail. (Tr. 150) At this visit Ms. McNail noted that "patient is not compliant with medication as prescribed." (Tr. 151) Plaintiff took half of a tablet of Trazodone, but because it did not address his symptoms he did not try a larger dose despite being prescribed to take 1-2 tablets at a time. (Tr. 151, 152, 156) Plaintiff explained his behavior by telling Ms. McNail "he was sure [the medicine] wasn't going

---

[4] Under the Diagnostic and Statistical Manual of Mental Disorders, 4th Edition ("DSM-IV") that was in place at the time, a GAF score of 41-50 indicates "[s]erious symptoms (e.g. suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g. no friends, unable to keep a job)." GAF scores, particularly low scores, have long been disfavored in disability cases, as the scale "does not have a direct correlation to the severity requirements in our mental disorder listings." 65 Fed.Reg. 50746, 50764–65, 2000 WL 1173632 (August 21, 2000). The subsequently-published DSM-V has eliminated the concept of GAF entirely.

to work anyway." (Tr. 151) Plaintiff admitted that the Depakote "took the edge off things." (Tr. 152) At this visit, Plaintiff stated that when he sat down to watch TV in the evening he felt like his throat was closing up. (Id.) Plaintiff had not discussed this issue with his doctor despite Ms. McNail's previous advice to do so. (Id.) Ms. McNail's assessment of Plaintiff's mental state indicated that he continued to exhibit a tangential thought process, difficulty sleeping, and an impaired long term memory. (Tr. 151) The assessment further indicated a pressured and excessive speech pattern, an anxious and irritable mood, poor impulse control, and poor insight. (Id.)

On May 6, 2013, Plaintiff saw his primary care provider, Karl Killion, D.O. (Tr. 159) Plaintiff reported chest pain and shortness of breath due to panic attacks and chronic low back pain. (Id.) Dr. Killion's prescribed Percocet for Plaintiff's complaints of pain, a topical ointment for Plaintiff's foot dermatitis, and Visteral for Plaintiff's anxiety. (Id.) Seven months later, on December 3, 2013, the claimant returned to Dr. Killion reporting chronic left shoulder pain, low back pain, generalized pain in his knees and hips. (Tr. 162) Plaintiff indicated that the Percocet relieved his pain fairly well, but that the pain had worsened during the winter months. (Id.) During this appointment Plaintiff made no specific complaints of anxiety or other mental health symptomatology. (Id.) Dr. Killion noted some tenderness to palpitation of Plaintiff's lumbar spine and tenderness of Plaintiff's shoulder at the biceptical groove, but found that Plaintiff still had a full range of motion and no weakness in the muscles. (Id.) Dr. Killion renewed the prescription for Percocet, but without a change in dosage. (Id.)

### 2) Medical Opinion Evidence

Plaintiff provided medical opinion evidence from Dr. Steven Adams, Psy.D. Plaintiff received Dr. Adams' opinion while applying for Medicaid benefits. (Tr. 165) Plaintiff reported

a depressed mood, decreased energy, withdrawing socially, memory problems, low self-esteem, conflict avoidance, excessive anxiety, panic attacks occurring several times a week, and frequent headaches. (Id.) Diane White, M.A., conducted the mental status examination and found Plaintiff alert and responsive, and oriented to person, place, and time. (Tr. 165, 167) Ms. White also observed Plaintiff to possess a normal gait, easy rapport, affect consistent with conversation and facial expression, and clear and normally paced speech. (Tr. 167) However, Ms. White noted that Plaintiff had an anxious mood, that he understood verbal concepts below the average level, and that he appeared to become "disinterested with the interview process and began answering quickly without giving his responses much thought." (Id.) Additionally, Ms. White noted that Plaintiff appeared to over report some of his symptoms. (Id.)

Following review and interpretation, Dr. Adams diagnosed Plaintiff with a bipolar II disorder and assigned Plaintiff a GAF score of 48. (Tr. 168) Dr. Adams wrote that Plaintiff appeared capable of understanding and remembering simple instructions as well as adapting to a typical work environment. (Id.) Dr. Adams additionally noted that Plaintiff seemed unable to sustain concentration and persistence on simple tasks and unable to interact in moderately demanding social situations. Finally, Dr. Adams reported that Plaintiff's health problems might prevent him from working. (Id.)

There was also medical opinion evidence from Joan Singer, Ph.D., a non-examining State Agency Psychologist. (Tr. 46-49) Dr. Singer found that Plaintiff's medically-diagnosed anxiety disorders were severe. (Tr. 49) Dr. Singer found that insufficient evidence existed to determine Plaintiff's functional limitations due to his failure (despite reminders and contact with Plaintiff's attorney) to complete Activities of Daily Living forms. (Tr. 48)

## III. ALJ's Decision

On October 24, 2014, the ALJ issued a written decision finding Plaintiff not disabled. (Tr. 9-21) The ALJ's decision adhered to the five-step process required by the Commissioner's regulations. 20 C.F.R. 404.1420(a).

In the first step, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since October 15, 2013, his application date. (Tr. 11) In the second step, the ALJ found that Plaintiff suffered from the following severe impairments: (1) bipolar disorder, (2) anxiety, and (3) osteoarthrosis. Id. The ALJ found that Plaintiff's foot dermatitis was non-severe and that no doctor or other treating source had ever indicated that the condition had imposed any significant long-term limitations or complications. Id. In the third step, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR 416.920(d), 416.925 and 416.926.

As part of step four, the ALJ assessed Plaintiff's Residual Functional Capacity ("RFC"). The ALJ described Plaintiff's RFC as follows:

> [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) with the following additional limitations: he can occasionally climb ramps and stairs, stoop, and crouch; he should never climb ladders, ropes, or scaffolds; he should avoid concentrated exposure to vibration; he is capable of performing simple, routine tasks in a low stress work environment which is defined as one in which there are only occasional work place changes and where contact with supervisors, co-workers, or the general public is occasional.

(Tr. 14)

In determining Plaintiff's RFC, the ALJ considered the medical evidence in the record, weighed the relevant opinion evidence, and evaluated Plaintiff's credibility. (Tr. 14-19) The ALJ considered the findings of treating sources, and gave significant weight to the findings and opinions of Dr. Singer. (Tr. 18) The ALJ determined that Plaintiff had low credibility due to the

delay between Plaintiff's alleged onset of disability and the first records of his treatment, because when he did seek treatment he only continued for four months, and because any supplemental security income benefits would exceed the earnings Plaintiff received in the past due to his poor work history. (Tr. 15)

After determining Plaintiff's RFC, the ALJ concluded that Plaintiff could not perform any past relevant work. (Tr. 19) Next, the ALJ determined that Plaintiff qualified as a "younger individual" as defined in 20 CFR 416.963, and that Plaintiff possessed a limited education and an ability to communicate in English. (Tr. 19, 20) In step five, the ALJ found that jobs exist in significant numbers in the national economy that Plaintiff could perform, considering his age, education, work experience, and RFC. (Tr. 20) Based on this finding, the ALJ found Plaintiff not disabled under 42 U.S.C. § 1382c(a)(3)(A). (Tr. 21)

### IV. Issues Presented for Review

On appeal Claimant presents two related arguments: first that the ALJ did not assess an appropriate mental RFC because she failed to explain the weight she gave to Dr. Adams' medical opinion; and second, that the ALJ did not provide a sufficient narrative statement to support the RFC. (ECF No. 15 at 7-15)

### V. Standard of Review

"To be eligible for [disability] benefits, [Plaintiff] must prove that he is disabled …." Baker v. Sec'y of Health and Human Servs., 955 F.2d 552, 555 (8th Cir. 1992); see also Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001). The Act defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A)

and 1382c(a)(3)(A). A claimant qualifies as disabled "only if his physical or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423 (d)(2)(A) and 1382c(a)(3)(B); see also Bowen v. Yuckert, 482 U.S. 137, 140 (1987).

Per regulations promulgated by the Commissioner, the ALJ follows a five-step process in determining whether a claimant is disabled. "During the process the ALJ must determine: '1) whether the claimant is currently employed; 2) whether the claimant is severely impaired; 3) whether the impairment is, or is comparable to, a listed impairment; 4) whether the claimant can perform past relevant work; and if not 5) whether the claimant can perform any other kind of work.'" Andrews v. Colvin, 791 F.3d 923, 928 (8th Cir. 2015) (quoting Hacker v. Barnhart, 459 F.3d 934, 936 (8th Cir. 2006)). "If, at any point in the five-step process the claimant fails to meet the criteria, the claimant is determined not to be disabled and the process ends." Id. (citing Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005)); see also Martise v. Astrue, 641 F.3d 909, 921 (8th Cir. 2011).

The Eight Circuit has repeatedly emphasized that it intends district courts to narrowly review an ALJ's disability determination and that courts should "defer heavily to the findings and conclusions of the Social Security Administration." Hurd v. Astrue, 621 F.3d 734, 738 (8th Cir. 2010) (quoting Howard v. Massanari, 255 F.3d 577, 581 (8th Cir. 2001)). District courts should affirm the ALJ's findings if "substantial evidence" supports the findings on the record as a whole. See Finch v. Astrue, 547 F.3d 933, 935 (8th Cir. 2008). Substantial evidence is "less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." Juszczyk v. Astrue, 542 F.3d 626, 631 (8th Cir. 2008).

Despite this deferential stance, a district court's review must include "more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision." Beckley v. Apfel, 152 F.3d 1056, 1059 (8th Cir. 1998). A district court must "also take into account whatever in the record fairly detracts from that decision." Id. Specifically, in reviewing the Commissioner's decision, a district court shall examine the entire administrative record and consider:

1. The credibility findings made by the ALJ;
2. Plaintiff's vocational factors;
3. The medical evidence from treating and consulting physicians;
4. Plaintiff's subjective complaints relating to exertional and non-exertional activities and impairments;
5. Any corroboration by third parties of Plaintiff's impairments;
6. The testimony of vocational experts when required, including any hypothetical questions setting forth Plaintiff's impairments.

Stewart v. Sec'y of Health & Human Servs., 957 F.2d 581, 585-86 (8th Cir. 1992).

Finally, a reviewing court should not disturb the ALJ's decision unless it falls outside the available "zone of choice" defined by the evidence of record. Buckner v. Astrue, 646 F.3d 549, 556 (8th Cir. 2011). A decision does not fall outside that zone simply because this Court might have reached a different conclusion had it been the original finder of fact. See also McNamara v. Astrue, 590 F.3d 607, 610 (8th Cir. 2010) (explaining that if substantial evidence supports the Commissioner's decision, the court "may not reverse, even if inconsistent conclusions may be drawn from the evidence, and [the court] may have reached a different outcome.").

**VI. Analysis of Issues Raised for Review**

    **A. Failure to Address Weight Given to Dr. Adams' Opinion**

Plaintiff contends that the ALJ erred by failing to explain the weight given to Dr. Adams' examining source opinion. (ECF No. 15 at 7) According to Plaintiff, because of this error, the ALJ failed to address probative evidence and therefore the case should be remanded. The ALJ

summarized Dr. Adams' medical findings in her decision—including Dr. Adams' finding that Plaintiff seemed unable to sustain concentration and persistence on simple tasks. (Tr. 16-17) But later, when analyzing Plaintiff's RFC, she wrote that "no opinions pertaining to the [Plaintiff]'s functioning were specifically noted." (Tr. 18)

Since the ability to sustain concentration and persistence pertains to an individual's functioning level, the ALJ's opinion incorrectly asserts that the record did not include any opinions pertaining to Plaintiff's functioning level. An ALJ "is free to discount a physician's report if the record warrants this." McCadney v. Astrue, 519 F.3d 764, 767 (8th Cir. 2008). However, in this case, the ALJ did not clearly indicate whether she discounted Dr. Adams' opinion, and if so, why. Plaintiff correctly argues that the ALJ failed to explain what weight, if any, she gave to Dr. Adams' testimony.

### B. RFC & Insufficient Narrative Statement

Plaintiff next argues that the ALJ failed to provide a sufficient narrative statement to support the RFC by improperly giving "significant weight" to Dr. Singer's opinion, by mischaracterizing evidence in her discussion of Plaintiff's RFC, and by failing to address Dr. Adams' opinion indicating significant limitations in concentration, persistence, and pace. (ECF No. 15 at 11, 12) In her opinion, the ALJ gave "significant weight" to Dr. Singer's finding that Plaintiff's "medically diagnosed anxiety was non-severe." (Tr. 18, 47) To the contrary, the record shows that Dr. Singer found that Plaintiff's medically diagnosed anxiety was severe. (Tr. 47) Plaintiff correctly argues that the ALJ mischaracterized evidence in her discussion of Plaintiff's RFC. (ECF No. 15 at 11, 12)

While on their own, either error might be harmless, "several errors and uncertainties in the [ALJ's] opinion that individually might not warrant remand, in combination create sufficient

doubt about the ALJ's rationale for denying [Plaintiff's] claims to require further proceedings." Willcockson v. Astrue, 540 F.3d 878, 879-880 (8th Cir. 2008); see also Draper v. Barnhart, 425 F.3d 1127, 1130 (8th Cir. 2005) (noting "inaccuracies, incomplete analyses, and unresolved conflicts of evidence" constitute proper basis for remand).

The Court notes that deficiencies in the ALJ's decision do not automatically entitle the Plaintiff to recover benefits. See Buckner, 213 F.3d at 1011(noting that "[o]rdinarily, when a claimant appeals from the Commissioner's denial of benefits and we find that such a denial was improper, we, out of 'our abundant deference to the ALJ,' remand the case for further administrative proceedings") (citing Cox v. Apfel, 160 F.3d 1203, 1210 (8th Cir. 1998)).

In this case, the legal error resulting from the ALJ's failure to explicitly address Dr. Adams' medical opinion evidence and in the ALJ's mischaracterization of evidence from the record deprives the ALJ's decision of substantial evidentiary support. Although the Court is aware that the ALJ's decision as to non-disability may not change after properly considering all the evidence of record and undergoing the required analysis, the determination is nevertheless one that the Commissioner must make in the first instance. See Pfitzner v. Apfel, 169 F.3d 566, 569 (8th Cir. 1999). Upon remand, the ALJ shall clarify the weight given to Dr. Adams' medical opinion evidence and resolve inconsistencies between the record and the decision.

### VII. Conclusion

For the foregoing reasons, the Court will enter a final judgment pursuant to Rule 58 of the Federal Rules of Civil Procedure reversing the decision of the ALJ and remanding this case to the Commissioner under 42 U.S.C. § 405(g).

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **REVERSED** and

**REMANDED** for further proceedings consistent with this Memorandum. A separate Judgment in accordance with this Memorandum and Order is entered this same date.

*/s/ John M. Bodenhausen*
JOHN M. BODENHAUSEN
United States Magistrate Judge

Dated this 9th day of May, 2017